Keith J. Miller
kmiller@rwmlegal.com
Michael Gesualdo
mgesualdo@rwmlegal.com
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
Telephone: 973-690-5400
Facsimile: 973-466-2761

Lisa Kobialka (*pro hac vice* to be filed*)*
lkobialka@kramerlevin.com
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

Aaron M. Frankel (*pro hac vice* to be filed*)*
afrankel@kramerlevin.com
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8363

*Attorneys for Plaintiff*
*Field Intelligence, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FIELD INTELLIGENCE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> XYLEM DEWATERING SOLUTIONS, INC., <br><br> *Defendant* | By ECF <br><br> Civil Action No. _____ <br><br> **COMPLAINT** <br><br> Jury Trial Demanded |

Plaintiff Field Intelligence, Inc. ("Field Intelligence") complains against Defendant Xylem Dewatering Solutions, Inc. ("Xylem") as follows:

**INTRODUCTION**

1. Field Intelligence filed this suit to protect its valuable intellectual property from misappropriation by Xylem and to prevent irreparable harm to that intellectual property and to

Field Intelligence's business. Field Intelligence asserts claims of breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, and unfair competition against Xylem.

2. Field Intelligence is a leading provider of Internet of Things (IoT) smart-enabled services that provide satellite and terrestrial wireless communications to agriculture, oil and gas, heavy equipment, and industrial assets, enabling customers to easily gather, compile, analyze, and transform edge-data from a broad range of remote equipment assets. Field Intelligence uses proprietary software and hardware to collect data from and connect devices deployed in the field to their clients' computer systems.

3. Field Intelligence entered into a contract with Xylem on April 14, 2017 to provide computer software, hardware units and services to monitor the operation and status of Xylem's remotely located pump machinery. Exhibit A (the "Agreement"). Under the Agreement, Field Intelligence entrusted Xylem with access to its confidential information which included its software, hardware, and services. In exchange, Xylem agreed to not copy, reverse engineer or create derivative works from Field Intelligence's software, hardware or services.

4. Xylem breached the Agreement, misappropriated Field Intelligence's trade secrets and confidential information and technology and unjustly enriched itself by creating unauthorized copycat data transmission devices and services, which Xylem is substituting for the devices and services provided by Field Intelligence.

## THE PARTIES

5. Plaintiff Field Intelligence is a California corporation with its principal place of business at 10035 Carroll Canyon Road, San Diego, California 92131. Field Intelligence is a wholly-owned subsidiary of Network Innovations Inc.

6. Xylem is a New Jersey corporation, with a principal place of business at 84 Floodgate Road, Bridgeport, New Jersey 08014.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. This Court also has subject matter jurisdiction over the claims pursuant to the provisions of 28 U.S.C. § 1331 (federal question jurisdiction), as one of Plaintiff's claims arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, et seq. This Court has supplemental jurisdiction over the New Jersey state law claims under 28 U.S.C. § 1367.

9. This Court has general and specific personal jurisdiction over Defendant Xylem based upon its contacts with this jurisdiction, including the location of its headquarters within this District and because at least a substantial portion of Xylem's misconduct giving rise to this action took place in this District. Further, in Section 11(b) of the Agreement, Xylem agreed and consented to this Court's jurisdiction over this dispute.

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) because Defendant Xylem resides in this District, a substantial part of the events giving rise to the claims occurred in this District, and, in Section 11(b) of the Agreement, Xylem agreed that this District is convenient and the exclusive venue for this dispute.

## FIELD INTELLIGENCE'S CONFIDENTIAL INFORMATION AND TRADE SECRETS

11. Field Intelligence has devoted extensive time, money, and other resources to developing its proprietary products and services including, but not limited to, the design, development, and testing of (1) hardware units, including dual cellular and satellite remote terminal

units (RTUs), that connect to devices deployed in the field, collect data from the devices and relay the data back to a company's computer systems ("Field Units"), (2) computer software that is used to monitor the operation and status of remotely located machinery and provides clients with a user interface to view the real-time and historical operation of their machinery ("Software"), and (3) support services and hosted websites to monitor the status and operation of remotely located machinery via the Field Units and Software ("Services").

12. Field Intelligence protects its Field Units, Software and Services as trade secrets, confidential information and proprietary designs (together, the "Field Intelligence Technology").

13. The Field Intelligence Technology is not generally known outside of Field Intelligence's organization, and Field Intelligence takes steps reasonable under the circumstances to keep such information confidential, including, but not limited to, having its employees and vendors sign non-disclosure or proprietary information and inventions agreements precluding disclosure, having customers sign non-disclosure or confidentiality agreements, requiring all employees through company policies and employment agreements that such information must be held confidential, password protecting electronically stored information, and reasonably controlling access to such information. Field Intelligence uses secure network storage for its sensitive and confidential information, and limits access to such information to select employees.

14. Therefore, the Field Intelligence Technology comprises trade secrets under N.J.S.A. § 56:15-2 (2013) and the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1832).

15. Field Intelligence takes these precautions to maintain the secrecy of the Field Intelligence Technology because Field Intelligence would suffer irreparable competitive harm if its technology were to be disclosed to, obtained by, or used on behalf of, its competitors and, further, would suffer additional irreparable harm through the loss of its good will and reputation if

competitors utilized the Field Intelligence Technology to solicit and do business with such customers.

16. In addition, Field Intelligence would suffer further irreparable harm through the loss of its good will and severe financial injury if its customers discovered that one of Field Intelligence's customers had knocked off the Field Intelligence Technology to save costs, as other customers could decide to attempt to misappropriate Field Intelligence Technology rather than continue to purchase the hardware units and services from Field Intelligence.

### XYLEM STOLE FIELD INTELLIGENCE'S TRADE SECRETS

17. Effective April 14, 2017, Field Intelligence and Xylem entered into the Agreement. Under the Agreement, Field Intelligence provided Xylem with access to the Field Intelligence Technology for monitoring Xylem's pump machinery. Exhibit A at 1.

18. Xylem agreed that Field Intelligence owns the Field Intelligence Technology, that the Field Intelligence Technology contains trade secrets, and that Xylem would not copy, duplicate, reverse engineer or create derivative works from the Field Intelligence Technology. Exhibit A at §§ 2(a), (b).

19. Field Intelligence has performed all of its obligations under the Agreement, including providing Xylem with over 1,000 Field Units and providing Services and Software.

20. Pursuant to the Agreement, Xylem is to pay Field Intelligence for each Field Unit that it deploys and a monthly subscription fee for the use of the Software and Services for each active Field Unit. Agreement at § 3.

21. Starting in April 2019, Xylem began to request the deactivation of deployed Field Units and stopped paying the monthly subscription fee for those units. To date, Xylem has deactivated 754 of the 1,031 Field Units it obtained from Field Intelligence.

22. In January 2019, Field Intelligence learned that Xylem was deploying its own RTUs and would start to replace Field Intelligence Field Units with Xylem's RTUs. In February 2019, Field Intelligence learned that Xylem was procuring bids for airtime (data service) for approximately 10,000 RTUs (which it had not obtained from Field Intelligence), at a price significantly below the price Xylem paid to Field Intelligence for each Field Unit under the Agreement.

23. In October 2019, Field Intelligence was able to obtain one of Xylem's RTUs. Upon inspection, Field Intelligence learned that Xylem's RTU was a near identical copy of Field Intelligence's Field Units. For example, both the Field Intelligence Field Units and Xylem's RTU (1) gather data from panel PLCs (Programmable Logic Controllers) and relay them over satellite-based and cellular interfaces, (2) use the same modem technology, (3) have a circuit board that interfaces between the external connector and the modem with the same or similar components, (4) have identical screw terminals and fuses, (5) use an identical, specific 21-pin industrial connector, (6) use the same proprietary pinouts (which permits Xylem to use the existing connection between the interface connector and panel when swapping in Xylem RTUs for Field Intelligence Field Units); (7) use the same antennae technology, (8) orient the antennae to the same rotation from the host board, (9) use the same antenna connector cables, with the same routing and lengths, (10) use the same Polycarbonate Enclosure with the exact same dimension, and (11) use the same mechanical mounting plate. The foregoing is exemplary, and does not identify all of the aspects of Field Intelligence's confidential and proprietary technology that Xylem copied.

24. In addition to Field Intelligence's investigations, Xylem's customers who previously used Xylem equipment with Field Intelligence Field Units have informed Field Intelligence that Xylem's RTUs are identical or very similar to Field Intelligence's Field Units.

25. Pursuant to Section 7 of the Agreement, on November 4, 2019, Field Intelligence notified Xylem that Xylem was in material breach of at least Sections 1, 2 and 8 of the Agreement. Exhibit B.

26. Field Intelligence offered Xylem fifteen days to cure its breach by destroying its derivative RTUs, agreeing to cease and desist from further copying and agreeing to account for the derivative RTUs and pay the fees that would have been due to Field Intelligence had Xylem obtained the units from Field Intelligence. *Id.*

27. Xylem failed to do so during the fifteen day cure period.

28. Xylem's misappropriation of Field Intelligence's Technology and other wrongful activities in violation of its Agreement with Field Intelligence have caused Field Intelligence to suffer irreparable harm. Unless Xylem is enjoined from disclosing and using the Field Intelligence Technology and from otherwise violating its Agreement with Field Intelligence, Xylem will continue to injure Field Intelligence.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

29. Field Intelligence incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

30. Field Intelligence and Xylem entered into a valid and enforceable agreement on April 14, 2017.

31. As described above, Xylem breached at least Sections 1, 2 and 8 of the Agreement by reverse engineering, duplicating, disassembling and creating derivative works from and based on the Field Intelligence Technology.

32. Pursuant to Section 7 of the Agreement, Xylem agreed that Field Intelligence has the right to injunctive relief to enjoin any breach or attempt to breach by Xylem. Exhibit A at § 7.

33. The Agreement is reasonable and serves to protect Field Intelligence's trade secrets, confidential information, intellectual property, customer relationships and goodwill. Enforcement of the Agreement will not injure the public in any respect.

34. Unless restrained by the Court, Xylem will continue its unlawful acts.

35. As a direct and proximate result of Xylem's breach of the Agreement, Field Intelligence has sustained substantial damages that significantly exceed $75,000.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

36. Field Intelligence incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

37. Xylem entered into the Agreement with Field Intelligence, which required Xylem to keep confidential and not copy the Field Intelligence Technology, as set forth above. Under the Agreement, Xylem obtained access to the Field Intelligence Technology and agreed to pay Field Intelligence for the use of its Software, Hardware Units and Services. The Agreement, as does every contract, contains an implied convenient of good faith and fair dealing.

38. Without authorization, Xylem reverse engineered and copied the Field Intelligence Technology, and is depriving Field Intelligence of the revenues it would have received from Xylem under the Agreement.

39. Xylem's actions constitute a breach of the implied covenant of good faith and fair dealing in the Agreement.

40. Field Intelligence has sustained significant damages and injury, significantly exceeding $75,000, as a direct and proximate result of Xylem's breach of the implied covenant of good faith and fair dealing in the Agreement.

## COUNT III
### Misappropriation of Trade Secrets
### New Jersey Trade Secrets Act – N.J.S.A. § 56:15-1 *et seq.*

41. Field Intelligence incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

42. As set forth above, the Field Intelligence Technology is not generally known outside Field Intelligence's organization, and Field Intelligence takes steps reasonable under the circumstances to keep such information confidential.

43. Xylem obtained access to the Field Intelligence Technology by entering into the Agreement, under which Field Intelligence provided Xylem access to its Field Units, Software, and Services. In exchange for such access to the Field Intelligence Technology, Xylem agreed not to copy, reverse engineer or disclose the Field Intelligence Technology and to keep such information secret.

44. Xylem misappropriated the Field Intelligence Technology, including Field Intelligence's trade secrets, by reverse engineering Field Intelligence's Field Units and creating copycat RTUs. On information and belief, Xylem is further misusing Field Intelligence's trade secrets to provide service to the copycat RTUs.

45. As a result of Xylem's misappropriation of the Field Intelligence Technology, Field Intelligence has sustained damages.

46. Xylem is deactivating the Field Units that Field Intelligence provided to it and misusing Field Intelligence's trade secrets to replace the Field Intelligence Field Units with

copycat RTUs, depriving Field Intelligence of the revenues it would have received from providing services to those Field Units.

47. Xylem is further depriving Field Intelligence of revenue to which it is entitled under the Agreement by purchasing copycat RTUs from alternative sources instead of from Field Intelligence.

48. The value of Field Intelligence's goodwill and trade secrets is being harmed as a result of Xylem's misappropriation. Field Intelligence's customers and potential customers will learn that Xylem is copying the Field Intelligence Field Units, creating an impression in the marketplace that Field Intelligence's Field Units are a commoditized product that may be obtained from other sources instead of Field Intelligence.

49. Field Intelligence is entitled to an award of damages of both the actual loss Xylem caused by its misappropriation and Xylem's unjust enrichment or, in the alternative, a reasonable royalty for Xylem's misappropriation and unauthorized use of the Field Intelligence Technology pursuant to N.J.S.A. § 56:15-4.

50. Xylem misappropriated Field Intelligence's trade secrets willfully and maliciously, entitling Field Intelligence to recover attorneys' fees from Xylem pursuant to N.J.S.A. § 56:15-6 and punitive or exemplary damages from Xylem pursuant to N.J.S.A. § 56:15-4(b).

## COUNT IV
### Misappropriation of Trade Secrets
### Defend Trade Secrets Act of 2016 – 18 U.S.C. § 1832, *et seq.*

51. Field Intelligence incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

52. Xylem has misappropriated and misused the Field Intelligence Technology without authorization and in breach of its contractual obligations to Field Intelligence, as set forth above.

53. Xylem's continued use and disclosure of Field Intelligence's trade secrets constitutes imminent, immediate, and irreparable harm to Field Intelligence, as set forth above.

54. Xylem, unless restrained, will continue to misappropriate Field Intelligence's trade secrets, as set forth above.

55. Field Intelligence has sustained significant damages and injury as a direct and proximate result of Xylem's misappropriation of Field Intelligence's trade secrets, as set forth above, entitling Field Intelligence to an award of actual loss caused by Xylem's misappropriation, damages for Xylem's unjust enrichment and/or a reasonable royalty for Xylem's unauthorized use of Field Intelligence's trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(B).

56. Xylem misappropriated Field Intelligence's trade secrets willfully and maliciously, entitling Field Intelligence to recover its attorneys' fees from Xylem pursuant to 18 U.S.C. §1836(b)(3)(D) and punitive or exemplary damages from Xylem pursuant to 18 U.S.C. §1836(b)(3)(C).

## COUNT V
## Unfair Competition

57. Field Intelligence incorporates by reference the statements and allegations previously set forth in its Complaint as if fully rewritten herein.

58. Xylem intentionally stole the Field Intelligence Technology after contracting in the Agreement not to copy or reverse engineer the Field Intelligence Technology, and is now using the Field Intelligence Technology to substitute its own RTUs for Field Intelligence's Field Units.

59. Xylem has refused to refrain from misusing the Field Intelligence Technology.

60. Field Intelligence has sustained significant damages and injury as a direct and proximate result of Xylem's actions, as set forth above.

61. Xylem's actions constitute unlawful and unfair competition under the common law of New Jersey.

**WHEREFORE**, Field Intelligence respectfully requests that this Court enter judgment against Xylem and in favor of Field Intelligence as follows:

a. Compensatory damages in an amount to be proven at trial and exceeding the principal sum of $75,000;

b. punitive or exemplary damages;

c. preliminary and permanent injunction enjoining and restraining Xylem from disclosing and using the Field Intelligence Technology, requiring Xylem to destroy all hardware units, software and websites that are derivative, reverse engineered or copied from the Field Intelligence Technology, and compelling Xylem to provide written statements, under oath, disclosing the full extent of its use of the Field Intelligence Technology;

d. reasonable attorneys' fees and costs incurred by virtue of this action; and

e. such other and further relief as the Court may deem appropriate.

Dated: November 21, 2019

                ROBINSON MILLER LLC

                By: *s/ Michael J. Gesualdo*
                  Keith J. Miller
                  kmiller@rwmlegal.com
                  Michael J. Gesualdo
                  mgesualdo@rwmlegal.com

Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
Telephone: 973-690-5400
Facsimile: 973-466-2761

Lisa Kobialka
(*pro hac vice* to be filed)
lkobialka@kramerlevin.com
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

Aaron M. Frankel
(*pro hac vice* to be filed)
afrankel@kramerlevin.com
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8363

*Attorneys for Plaintiff*
*Field Intelligence Technologies, Inc.*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy in the above-captioned action is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

*s/Michael J. Gesualdo*
Michael J. Gesualdo
